# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| DEBBIE LEMKE, Individually and on Behalf of All Others Similarly Situated, | Case No.: 19-cv-663 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | |
| FRANKLIN COLLECTION SERVICE INC., | **Jury Trial Demanded** |
| Defendant. | |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Debbie Lemke is an individual who resides in the Eastern District of Wisconsin (Racine County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family or household purposes.

5. Defendant Franklin Collection Service, Inc. ("FCS") is a debt collection agency with its principal place of business located at 2978 West Jackson Street, Tupelo, Mississippi 38801.

6. FCS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. FCS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

8. FCS is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

9. On or about February 4, 2019, FCS mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly "OWED TO: AT&T." A copy of this letter is attached to this complaint as Exhibit A.

10. The alleged debt was incurred for personal, family or household purposes, namely personal telecommunications services.

11. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

12. Upon information and belief, Exhibit A is a form debt collection letter used by Defendant to attempt to collect alleged debts.

13. Upon information and belief, Exhibit A was the first letter that Defendant sent to Plaintiff regarding the alleged debt referenced in Exhibit A.

14. The face of Exhibit A states:

> IF YOU ARE NOT PAYING THIS ACCOUNT, CONTACT YOUR ATTORNEY REGARDING OUR POTENTIAL REMEDIES, AND YOUR DEFENSES, OR CALL (888) 215-8961.

Exhibit A.

15. The reverse side of Exhibit A contains a statement that largely reflects the statutory debt validation notice that the FDCPA, *see* 15 U.S.C. § 1692g(a), requires the debt collector mail the consumer along with, or within five days of, the initial communication:

2

UNLESS YOU NOTIFY US WITHIN THIRTY (30) DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THE DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME THIS DEBT IS VALID. IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN THIRTY (30) DAYS FROM RECEIVING THIS NOTICE THAT THE DEBT, OR ANY PART THEREOF, IS DISPUTED THIS OFFICE WILL OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A COPY OF A JUDGMENT AND MAIL YOU A COPY OF SUCH JUDGMENT OR VERIFICATION. IF YOU REQUEST THIS OFFICE IN WRITING WITHIN THIRTY (30) DAYS AFTER RECEIVING THIS NOTICE, THIS OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT CREDITOR.

<u>Exhibit A</u>.

16. The unsophisticated consumer would understand the statement that, "If you are not paying this account, contact your attorney regarding our potential remedies, and your defenses, or call (888)215-8961" as an instruction that a consumer without an attorney should communicate any dispute or refusal to pay the debt by phone.

17. The representation that the consumer should communicate a dispute by phone is false, deceptive, misleading, and confusing to the unsophisticated consumer and is inconsistent with the statutory disclosure of the consumer's right to dispute the debt.

18. The validation notice in <u>Exhibit A</u> contains three statements relating to the consumer's right to dispute the debt. *See* 15 U.S.C. § 1692g(a)(3)-(5).

19. The representation suggests to the consumer that disputes communicated orally are equivalent to disputes communicated in writing, when, in fact the consumer needs to provide written notification of his dispute to require the debt collector to provide verification of the debt, and cease collection pending verification. 15 U.S.C. § 1692g(a)(4); *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 738 (N.D. Ill. 2003) ("However, Crawford misses the point of the protection found in § 1692g(a)(4). Although a debt collector *may* provide verification upon *oral* notification, the debt collector *must* provide verification upon *written* notification. If the debtor gives only *oral* notification of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of the debt.").

3

20. The instruction that a consumer who is "not paying this account" should "contact your attorney . . . or call [Defendant]" is inconsistent with the disclosure that the consumer must dispute the debt in writing to trigger verification.

21. The instruction to call Defendant has the practical effect of discouraging individuals from submitting written disputes.

22. The overshadowing effect of the instruction to call is magnified because the instruction to call appears in the body of the letter and on the first page, whereas the statutory disclosures are formatted in a bizarre and confusing manner on the reverse side.

23. Numerous courts have found that similar instructions that consumers may communicate disputes by telephone are likely to mislead consumers about their statutory rights and violate the FDCPA. *See, e.g., Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 150 (3d Cir. 2013) ("If we can answer any questions, or if you feel you do not owe this amount, please call us toll free at 800-984-9115 or write us at the above address"); *Miller v. Payco-General Am. Credits, Inc.*, 943 F.2d 482, 483 (4th Cir. 1991) ("If a consumer attempted to exercise his statutory rights by making the requested telephone call, Payco would be under no obligation to comply with section 1692g's directives to verify the debt and cease collection efforts. The language on the front of the form instructs consumers to dispute their debt by telephone, in opposition to the statutory requirements.").

24. Moreover, the instruction to call if the consumer is "not paying" the debt may also be construed as an instruction to call the debt collector to inform them that the consumer *refuses to pay* the debt even if there is no dispute when notice of such refusal should also be communicated in writing.

25. 15 U.S.C. § 1692c(c) (emphasis added) states:

4

> (c) Ceasing communication
>
> If a consumer notifies a debt collector **in writing** that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except—
>
> (1) to advise the consumer that the debt collector's further efforts are being terminated;
>
> (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
>
> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy."

26. Although the debt collector is not required to affirmatively advise consumers of their rights under 15 U.S.C. § 1692c(c), it is misleading and unfair to instruct the consumer to communicate such refusals through the wrong channels. *See, e.g., Pogorzelski v. Patenaude & Felix APC*, No. 16-cv-1330, 2017 U.S. Dist. LEXIS 89678, at *3 (E.D. Wis. June 12, 2017).

27. Debt collectors have an incentive to avoid processing disputes and refusals. While the debt collection process is primarily automated, disputes and refusals must be processed by hand, and sometimes by an attorney's hand. Written disputes and refusals cause debt collectors to incur costs of time and money to validate debts, and put the collector at risk of FDCPA liability for the subsequent communications related to validation. *See, e.g., Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 785-86 (6th Cir. 2014) (debt collector's response to consumer's verification request was insufficient and violated 15 U.S.C. §§ 1692e and 1692g). Debt collectors may likewise be concerned that creditors, who must also respond to requests for validation, would be hesitant to use debt collectors whose letters prompt disputes, "wasting" creditors' time by requiring responses.

28. Plaintiff was confused by Exhibit A.

29. Plaintiff had to spend time and money investigating Exhibit A, and the consequences of any potential responses to Exhibit A.

30. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit A.

### *The FDCPA*

31. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer

standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th

7

Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

32. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

33. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

34. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

35. 15 U.S.C. § 1692g states, in part:

> (a) **Notice of debt; contents**
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> . . .
>
> > (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;
>
> (b)    Disputed Debts

> . . .
>
> Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

## COUNT I – FDCPA

36. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

37. <u>Exhibit A</u> is false, deceptive, misleading, confusing, and unfair to the unsophisticated consumer.

38. The instruction in <u>Exhibit A</u> that the consumer should call Defendant if the consumer is "not paying this account" is inconsistent with the consumer's right to dispute the debt and require the debt collector to cease collection pending verification.

39. The instruction in <u>Exhibit A</u> that the consumer should call Defendant if the consumer is "not paying this account" is inconsistent with the consumer's right to require the debt collector cease communication with the consumer by communicating the refusal to pay in writing.

40. Defendant violated 15 U.S.C. §§ 1692c(c), 1692e, 1692e(10), 1692g(a)(4), and 1692g(b).

## CLASS ALLEGATIONS

41. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit A</u> to the complaint in this action (c) seeking to collect a debt for personal, family or household purposes, (d) between May 6, 2018 and May 6, 2019, inclusive, (e) that was not returned by the postal service.

9

42. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

43. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA.

44. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

45. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

46. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

47. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: May 6, 2019

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin

10

Case 2:19-cv-00663-LA    Filed 05/06/19    Page 10 of 11    Document 1

John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com